UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| PEGGY GRINDSTAFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-CV-86 NAB |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Peggy Grindstaff's application for supplemental security income[1] under the Social Security Act, 42 U.S.C. § 416 *et seq.* Grindstaff alleged disability due to depression, anxiety, restless leg syndrome, degenerative disc disease, chronic low back pain, failed spinal fusion surgery, neurostimulation implant therapy surgery, left sciatic nerve flattened and encased in scar tissue, failed rhizotomy surgery for back, and arthritis. (Tr. 194.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 13.] Plaintiff asserts that the Commissioner's final decision is not supported by substantial evidence, because the administrative law judge ("ALJ") failed to provide good reasons for giving little weight to the medical opinion of her treating physician, Dr. Ramis Gheith. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

---

[1] Grindstaff also initially filed an application for disability insurance benefits, however, she did not meet the earnings requirement to be eligible for benefits. (Tr. 93.) *See* 42 U.S.C. § 423(c).

The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. For the reasons set forth below, the Court will affirm the Commissioner's final decision.

## I. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)A). The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 726 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## II. Discussion

### A. ALJ's Findings and Conclusions

In this case, the ALJ determined that Grindstaff had the severe impairments of status post L4-L5 laminectomy[2], facetectomy[3], and discectomy[4]. (Tr. 21.) He determined that she had the residual functional capacity to perform light work, except that she can frequently climb ladders and scaffolds and only tolerate occasional exposure to vibration. (Tr. 22.) Ultimately, the ALJ determined that Grindstaff was not disabled under the Social Security Act. (Tr. 27.)

Grindstaff alleges that the ALJ should have given substantial weight to the opinion of her treating physician, Dr. Gheith. The ALJ gave little weight to Dr. Gheith's written medical opinion, because he determined that it was "not consistent with [the] record as a whole including Dr. Gheith's treatment records." (Tr. 25.) He also stated that Dr. Gheith's opinion was "not supported with an explanation or other functional by functional assessment." (Tr. 25.) Then, the ALJ rejected Dr. Gheith's clinical finding that Grindstaff had a straight leg raising test[5] at 35 degrees. (Tr. 25.) The ALJ surmised that Dr. Gheith "did not specify whether the test was conducted in the seated or supine position" and "whether the claimant had findings on examination to support the limitations." (Tr. 25.)

### B. Analysis of Medical Opinion Evidence

Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given

---

[2] A laminectomy is an "excision of the posterior arch of a vertebra." *Dorland's Illustrated Medical Dictionary* 1003 (32nd ed. 2012).
[3] A facetectomy is the "excision of the articular facet of a vertebra." *Dorland's Illustrated Medical Dictionary* 669 (32nd ed. 2012).
[4] A discectomy or discectomy is the "excision of an intervertebral disc." *Dorland's Illustrated Medical Dictionary* 547 (32nd ed. 2012).
[5] A straight leg raising test is performed "with the patient lying supine, the symptomatic leg is lifted with the knee fully extended; pain the lower extremity between 30 and 90 degrees of elevation indicates lumbar radiculopathy, with the distribution of pain indicating the nerve root involved. *Dorland's Illustrated Medical Dictionary* 1900 (32nd ed. 2012).

3

to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions." 20 C.F.R. § 416.927(a)(2)[6]. All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 416.927(c)(2). "Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions themselves are inconsistent or where other medical assessments are supported by better or more thorough evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted).

---

[6] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the court will use the regulations in effect at the time that this claim was filed.

C.  **Grindstaff's Treatment with Dr. Gheith**

Dr. Gheith, a pain management specialist, treated Grindstaff between June 2013 and June 2016.  (Tr. 313-42, 460-527, 547-48, 548, 551-67[7].)  Before Grindstaff began treatment with Dr. Gheith, she had undergone previous back surgeries (rhizotomy, percutaneous dysectomy, and spinal fusion) in 2004, 2005, and 2011.  (Tr. 257-58, 271-72.)  She reported experiencing back pain for over twenty years to various providers and during her testimony.  (Tr. 54, 271, 320.)  At Grindstaff's initial visit with Dr. Gheith, he recommended that she seek addiction counseling, because she was on "high dose chronic opioid combination therapy" and he advised that the combination could be lethal.  (Tr. 318.)  He told her that she was not a candidate for a spinal cord stimulator unless she has a successful addiction treatment and successfully reduced or eliminated her high dose opioid use.  (Tr. 318.)  Grindstaff returned a few days later and reported to Dr. Gheith that she was opioid free and had started taking Suboxone.  (Tr. 320.)  Dr. Gheith then began treating Grindstaff.

His treatment notes indicate that he diagnosed her with postlaminectomy syndrome-lumbar region, thoracic or lumbosacral neuritis or radiculitis; chronic pain syndrome, opioid type dependence, nondependent tobacco use disorder, lumbago, carpal tunnel syndrome, other unspecified back disorder, radiculopathy of the lumbosacral and lumbar regions, spondylosis without myelopathy or radiculopathy of the lumbosacral and lumbar regions, myalgia, mild degenerative disease, and dorsalgia.  (Tr. 313-42, 460-527, 548, 551-67.)  Dr. Gheith noted that

---

[7] The administrative record also includes evidence submitted to the Appeals Council after the ALJ's decision.  "In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council."  *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999)).  "In such a situation, "[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'"  *Id.* (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)).

she had "severe lower back pain intractable in nature despite multiple conservative and interventional therapies." (Tr. 519.) During her treatment with Dr. Gheith, Grindstaff received a dorsal spinal cord stimulator (SCS) implant in September 2013. (Tr. 301-302.) In the months following the SCS implant, Grindstaff reported between 75% to 85% improvement in pain and function with improved standing tolerance, walking, and sleep. (Tr. 303, 306, 331, 334, 337, 340, 522, 525.) By November 2013, Grindstaff began having pain coverage issues with the implant and occasionally requested reprogramming during her visits with Dr. Gheith. (Tr. 340, 465, 469, 471, 516, 525.) She reported her pain as greater than 8 out 10, with 10 being the highest level of pain. (Tr. 463, 508, 510, 513, 551, 558, 564.) She also reported a decrease in the reduction of pain to 50% and below with the SCS, began receiving trigger point injections for her back, and had several changes to her narcotic pain medication. (Tr. 475, 478, 482, 486, 493, 497, 501, 516, 559.) She was also fitted for a back brace. (Tr. 519.)

### D. Dr. Gheith's Medical Opinion

Dr. Gheith's opinion, dated November 3, 2014, noted that Grindstaff experienced severe pain. (Tr. 399.) He opined that she could stand or sit for 15 minutes at one time, occasionally lift 10 pounds, lift nothing frequently, occasionally bend, and never stoop. (Tr. 399.) Upon examination, Dr. Gheith found that Grindstaff had full extension, flexion, abduction, rotation in her shoulder, elbow, wrist, hip, and cervical spine. (Tr. 400-401.) He also found that she had full grip strength in her hands. (Tr. 400.) Dr. Gheith's examination indicated reduced flexion-extension and lateral flexion of the lumbar spine. (Tr. 401.) Dr. Gheith also indicated that Grindstaff had a positive straight leg raising test. (Tr. 401.) As stated above, the ALJ gave Dr. Gheith's opinion little weight for three reasons: (1) "not consistent with [the] record as a whole including Dr. Gheith's treatment records," (2) not supported with an explanation or other

functional by functional assessment; and (3) Dr. Gheith did not specify whether the straight leg raising test was conducted in the seated or supine position, and "whether the claimant had findings on examination to support the limitations." (Tr. 25.)

Upon review of the record as a whole, Dr. Gheith's opinion substantially aligns with his treatment notes and the independent medical examination by Dr. Barry Burchett regarding range of motion values, strength, and grip values for most muscles. The ALJ gave great weight to Dr. Burchett's opinion. (Tr. 25.) There are only a few significant differences. First, Dr. Gheith noted on all of Grindstaff's examinations that she walked with an antalgic gait[8] with minimal difficulty and Dr. Burchett's one time medical examination stated that she walked with a normal gait. Second, Dr. Burchett's April 16, 2014 examination revealed a negative straight leg raise test (Tr. 394-95) and Dr. Gheith's November 3, 2014 examination revealed a positive straight leg raise test (Tr. 401). Third, Dr. Burchett's examination revealed normal flexion of the lumbar spine. (Tr. 397.) Dr. Gheith's examination indicated reduced flexion-extension and lateral flexion of the lumbar spine. (Tr. 401.)

Interestingly, Grindstaff visited her primary care physician Dr. Stephen Crawford on the same day or the next day that she visited Dr. Burchett and Dr. Gheith. During her April 17, 2014 visit with Dr. Crawford, he noted that she was "feeling the same on pain." (Tr. 453.) Dr. Crawford indicated that her extremities, musco/skeletal, and neuro were not normal. (Tr. 453.) Her chronic pain was also noted. During her visit with Dr. Burchett the day before, Dr. Burchett noted that she had carpal tunnel syndrome with a positive Phalgen sign and Tinel sign. (Tr. 395.) He noted there was no tenderness or muscle spasm in the lower extremities, cervical, or

---

[8] Antalgic indicates "counteracting or avoiding pain, as a posture or gait assumed so as to lessen pain." *Dorland's Illustrated Medical Dictionary* 97 (32nd ed. 2012).

dorsolumbar spines. (Tr. 394.) He noted that she was able to perform a single full squat but complained of pain in her lower back when doing so. (Tr. 394.)

During her November 3, 2014 visit with Dr. Crawford, Grindstaff reported that "other than low back pain she is feeling well." (Tr. 441.) Dr. Crawford noted her low back pain continues and the presence of radicular pain. (Tr. 441.) During her visit with Dr. Gheith on the same day, she indicated that the SCS device covered painful regions, however, she had residual pain and that the Percocet helped with the residual pain. (Tr. 505.) Dr. Gheith observed a decreased range of motion and severe touch to palpation of the lumbar spine. (Tr. 505.)

The evidence in the record as a whole, including Dr. Gheith's opinion, indicates that the ALJ's ultimate decision of no disability finding is supported by evidence in the record as a whole. The ALJ's evaluation of Dr. Gheith's medical opinion did not constitute legal error. Dr. Gheith's November 2014 opinion was internally inconsistent. For example, the form asked the physician to indicate with a check mark certain symptoms that were present on examination and testing. Dr. Gheith specifically did not check the choices for limitation of motion for the spine, positive straight leg raising test, or inability to ambulate effectively. (Tr. 399.) Later in the opinion, Dr. Gheith noted limited range of motion of the lumbar spine, limits on standing and walking of 15 minutes, and a positive straight leg raising test. (Tr. 399, 401.) Dr. Gheith also left some of the questions blank regarding upper and lower extremity strength and weakness. (Tr. 400-401.) Finally, Dr. Gheith did not select an option for how many hours Grindstaff could work per day, thereby implying that she could not work any hours. (Tr. 399.) These findings without an explanation considering the other evidence in the medical record supports the weight given to Dr. Gheith's opinion.

There is no dispute that Grindstaff experiences chronic lower back pain. "Although the evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore, difficult to evaluate, the [ALJ] must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant." *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978). "Whether or not a[n] explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain." *Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1984). "As is true in many disability cases, there is no doubt that [claimant] is experiencing pain." *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900.

## III. Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable person would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Doc. 1, 13, 19.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 15th day of August, 2018.

                                                  /s/ Nannette A. Baker
                                            NANNETTE A. BAKER
                                            UNITED STATES MAGISTRATE JUDGE